ESTATE OF DOUGLAS CHANDOR, DECEASED, INA K. CHANDOR, ADMINISTRATRIX, AND INA K. CHANDOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52350. Filed June 27, 1957.

*J. M. McMillin, Esq.*, for the petitioners.
*Frank C. Allen, Esq.*, for the respondent.

722

OPINION.

BLACK, *Judge:* Much has been written concerning the Yalta Conference and its influence on future events. These are matters for the historian to appraise and are beyond the province of our discussion.

We have but one issue in this proceeding to decide and that is whether the sale in 1948 by petitioner of the Winston Churchill portrait, which he had painted, was the sale of a capital asset and entitled to capital gains treatment under the provisions of section 117 of the 1939 Code, as petitioners contend, or whether the sale was one of property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business and the gain resulting from such sale is ordinary income taxable to petitioners as such under the provisions of section 22 (a) of the 1939 Code, as the Commissioner has determined.

It is undisputed that petitioner had owned the portrait for more than 6 months prior to its sale, that he recovered his cost basis as an expense, and that the amount which he received from the sale was $25,000. Apparently there are no substantial differences between the parties as to the facts. The differences between them are as to the

proper construction to be given to the applicable statutes and Treasury regulations.[1]

Respondent's principal contention is that the Churchill portrait was property held by petitioner primarily for sale to customers in the ordinary course of his business and therefore is expressly excluded from being classed as a capital asset by the provisions of section 117 (a) (1) (A), 1939 Code. Petitioners, on the other hand, contend that although petitioner was engaged in the business of painting portraits, yet it was always for an agreed price under contract and that he was never engaged in the business of painting portraits for sale and that the only portrait ever sold by petitioner was the Churchill portrait. Therefore, argue petitioners, the Winston Churchill portrait was not "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" as provided in section 117 (a) (1) (A) of the 1939 Code.

We shall now take up the language used in section 117 with a view of ascertaining whether the sale of the Churchill portrait falls within the classification of the sale of a capital asset as defined in the statute and is therefore entitled to capital gains treatment as petitioner contends, or whether the sale of the portrait is excluded by some one or more of the exceptions in the statute and therefore the gain resulting from the sale must be taxed as ordinary income under section 22 (a) of the 1939 Code as respondent has determined. It will be noted that section 117 (a) (1) defines capital assets as follows: "(1) CAPITAL ASSETS.—The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business) * * *." Clearly the Churchill portrait was property owned and held by petitioner. True, it was the product of the professional skill and talent of petitioner but nevertheless we think the study portrait of Churchill was property. But not all property owned by a taxpayer represents

---

[1] Internal Revenue Code of 1939 :

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business ;

(B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or real property used in his trade or business ;

\* \* \* \* \* \* \*

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income ;

Regulations 111 :

SEC. 29.117–1. MEANING OF TERMS.—The term "capital assets" includes all classes of property not specifically excluded by section 117 (a) (1). In determining whether property is a "capital asset," the period for which held is immaterial.

capital assets under section 117. There are certain exceptions to the broad definition of capital assets contained in 117 (a) (1) above. After giving the broad definition as above set out, the statute goes on to say—

but does not include—

(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

The Commissioner does not contend that the Churchill portrait was "stock in trade" of petitioner nor does he contend that it was property of a kind which should be included in the inventory of petitioner for, as a matter of fact, petitioner had no inventories. The Commissioner does contend, however, that the portrait was property held by petitioner "primarily for sale to customers in the ordinary course of his trade or business." In arguing that this was so, respondent, among other things, said:

Decedent was a professional artist. Income resulting from the sale of any product of his creative talent—whether it be portrait, landscape or impressionistic painting—would be ordinary income. The fact that he did or did not have a commission or contract to do the painting surely could not change the result.

To this argument of respondent, petitioner replied as follows:

The undisputed evidence is that Mr. Chandor never *held* a portrait for sale in his life. He never painted a portrait for sale. The only portrait he ever sold in his entire life was the Churchill portrait. As only one sale was ever made of a portrait by Mr. Chandor, the conclusion that he was making a sale to a customer in the ordinary course of his business must be based on this one sale. Just what is meant by the term "held for sale to customers in the ordinary course of a taxpayer's business" has been the subject of attention of the courts. In *Herwig* vs. *U. S.* * * * [105 F. Supp. 384], the court cites with approval a definition given in *Fahs* vs. *Crawford*, 161 F. 2d 315, 317, which reads as follows:

Carrying on a business, however, implies an occupational undertaking to which one habitually devotes time, attention, or effort with substantial regularity.

The definition is so clear and logical that comment seems unnecessary. That a single, isolated transaction, the selling of one portrait, put the petitioner (Chandor) in the business of selling portraits in the regular course of business to customers, lacks the faintest logic. It is also to be noted that petitioner never sold another portrait after this sale to Mr. Baruch. The petitioner was not in the business of selling portraits to customers in the ordinary course of his business.

We think that the question we have here is a rather narrow one. Both parties refer to it in their briefs as one of first impression. Both parties cite cases which they say by analogy support their respective arguments. We have read these cases but do not find them very helpful.

Therefore, we see no point in discussing them. After a careful consideration of the facts and study of the applicable statute, we have concluded that the issue should be decided in favor of petitioners.

Chandor was an artist who had painted a portrait for which he was not to be paid under contract and on which no one had any claim whatever. The Churchill study picture was painted with no intention of selling it. When petitioner did sell it under the circumstances narrated in our Findings of Fact, it was the only portrait he ever sold before or after such sale. Under these circumstances, we think it would be difficult to hold that Chandor was in the business of selling portraits. But even if it be held that Chandor's uniform practice of painting portraits under contract for a fixed fee to be paid when the portrait was completed had the effect of putting him in the business of selling portraits, we still think the Winston Churchill study portrait was not held for sale by him in that business. The testimony is convincing that it was not painted for sale by Chandor but was a study portrait not intended for sale and that its subsequent sale by him was a casual sale induced by the circumstances narrated in our Findings of Fact.

Based on the record, we have made the following ultimate finding at the conclusion of our Findings of Fact:

> The study portrait of Winston Churchill painted by petitioner Douglas Chandor and sold in 1948 to Bernard Baruch was not property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *

In our view, that finding has the effect of deciding the only issue involved in petitioners' favor.

Perhaps we should point out that the Revenue Act of 1950 amends section 117 of the 1939 Code, under consideration here, by increasing the list of assets which were denied relief under this section. The amendment reads as follows:

> (C) a copyright; a literary, musical or artistic composition; or similar property; held by—
>    (i) a taxpayer whose personal efforts created such property, * * *

This amendment would undoubtedly preclude capital gains treatment to the sale of the Churchill portrait here involved, and petitioner concedes that is so, but by its express terms the amendment was made applicable to taxable years beginning after September 23, 1950. It is, therefore, not applicable to the year 1948, which is before us.

Because of other adjustments not contested,

*Decision will be entered under Rule 50.*